IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEX EALY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 1:20-cv-00025-SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.    INTRODUCTION

Plaintiff Alex Ealy commenced this action on January 10, 2020, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed his application on August 16, 2016, alleging that he became disabled on December 31, 2014. (Tr. 15, 46-47, 58).[2] Plaintiff's application was denied at the initial administrative level. (Tr. 15, 46-58). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"), in which Plaintiff entered into an agreement and appeared with a non-attorney representative. (Tr. 15, 28-45, 65-66, 68). On December 5, 2018, the ALJ issued an unfavorable decision. (Tr. 15-24). Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on November 15, 2019.

---

[1] Kilolo Kijakazi became acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the transcript pages are denoted by the abbreviation "Tr."

(Tr. 1-5). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Doc. 1; Doc. 11, at 15. The case is ripe for review pursuant to 42 U.S.C. § 405(g). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 9, 10. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.     STANDARD OF REVIEW AND REGULATORY FRAMEWORK[3]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However,

---

[3] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[5]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To evaluate the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. at 1240.

---

[5] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."
*Id*.

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 33 years old at the time he filed his application for benefits and 35 years old at the time of the ALJ's decision. (Tr. 22, 24, 30). Plaintiff is a resident of Dothan, Alabama, and lives with his mother in a house. (Tr. 30, 36, 194). Plaintiff has at least a high school education. (Tr. 22, 167).

Plaintiff claims that his ability to work is limited by posttraumatic stress disorder ("PTSD"), eczema, gastroesophageal reflux disease ("GERD"), and flat feet. (Tr. 46). Plaintiff previously worked as an industrial truck mechanic. (Tr. 22, 33-34, 167).

Following the administrative hearing, at which Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.   The claimant has not engaged in substantial gainful activity since December 31, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: posttraumatic stress disorder ("PTSD") and history of substance abuse (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple unskilled work with occasional interaction with the public and changes in the work setting introduced gradually.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on April 8, 1983 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2014, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17, 18, 19, 22, 23).

## IV.     ISSUES ON APPEAL

On appeal, Plaintiff raises the following issues: (1) that the ALJ's RFC determination is not based on substantial evidence as it fails to consider the side effects of medication, the limitations from nonsevere impairments, and the medical opinion of Donald Hinton, Ph. D.; (2) that the ALJ failed to consider the Veteran Affairs' ("VA") disability ratings regarding Plaintiff's eczema and migraines; and (3) that the ALJ held Plaintiff to a higher standard than the law requires at step two. (Doc. 11, at 1). The Commissioner maintains (1) that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe physical impairment; (2) that the ALJ sufficiently evaluated and considered the VA's disability rating; and (3) that in assessing Plaintiff's RFC, the ALJ properly evaluated his impairments, and fully accounted for the limitations supported by the record. (Doc. 12, at 6, 7, 11).

6

## V.     DISCUSSION

### A.     <u>Side Effects from Medication</u>

Plaintiff argues that the ALJ's RFC makes no limitation or restriction based on any side effects from Plaintiff's medication and that "the RFC fails to take into account the impairment caused by his medication and is therefore incomplete and improper." (Doc. 11, at 9). In support of his argument, Plaintiff maintains that he was prescribed Zoloft[6] and was "warned not to drive or work at high risk situations" if sedated from medication and that he was advised to "not drive a car or operate machinery until you know how this medication affects you." *Id*. (citing Tr. 392-93, 398).

"A factor relevant to a claimant's subjective symptoms that the Commissioner 'will consider' includes the 'type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms.'" *Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236, 238 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1529(c)(3)(iv)). "Where a represented claimant raises a question as to the side effects of medications, but does not otherwise allege the side effects contribute to the alleged disability, . . . the ALJ does not err in failing 'to inquire further into possible side effects.'" *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) (citation omitted). Moreover, "if there is no evidence before the ALJ that a claimant is taking medication that cause side effects, the ALJ is not required to elicit testimony or make findings regarding the medications and their side effects." *Id*. "[T]he ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled. Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work." *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010)

---

[6] Zoloft is an antidepressant used to treat major depressive disorder, (obsessive-compulsive disorder (OCD), panic disorder, social anxiety disorder (SAD), and post-traumatic stress disorder (PTSD). https://www.drugs.com/zoloft.html (last viewed September 24, 2021).

(citations omitted).

In this case, the record shows that the ALJ considered the effects of Plaintiff's medication. The ALJ noted that Plaintiff saw a psychiatrist for medication management who occasionally adjusted Plaintiff's medication "due to reports of side effects, lack of efficacy and/or noncompliance." (Tr. 19, 20). In determining Plaintiff's RFC, the ALJ specifically considered the side effects of the medications that Plaintiff was taking and any limitations as a result, stating that the "limitation to unskilled work would . . . account for some occasional complaints of dizziness and other possible medication side effects." (Tr. 21). Plaintiff does not allege that he is disabled by side effects from his medication. At the ALJ's hearing, Plaintiff testified that one of his medications was recently changed because it was not helping with his PTSD, but he did not mention experiencing any limitations or side effects from any of his medications. (Tr. 37-38). In his brief, Plaintiff mentions only possible side effects from taking Zoloft. Plaintiff has not provided any evidence that any side effects from his medications preclude him from working, and has not shown that side effects from his medications caused limitations that the ALJ did not consider in fashioning Plaintiff's RFC. Therefore, the court concludes that the ALJ's RFC assessment and assessment regarding the side effects of Plaintiff's medication under 20 C.F.R. § 404.1529(c)(3)(iv) is supported by substantial evidence. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (holding that where the claimant did not complain about the side effects from her prescription medications, other than an isolated mention that they might be responsible for causing her headaches, and where the record did not disclose any concerns from her doctors about side effects, substantial evidence supported the determination that the side effects did not present a significant problem); *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir.1992) (concluding that ALJ did not fail to develop record where claimant did not present evidence he was taking medication that caused side effects); *Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985)

(concluding Secretary did not have duty to further investigate side effects of counseled claimant's medications where claimant did not allege side effects contributed to her disability and stated only that her medication made her drowsy); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 904 (11th Cir. 2011) ("Because Burgin was represented by counsel at his hearing, the ALJ was not required to inquire in detail about his alleged side effects. Moreover, because there was no evidence Burgin was experiencing side effects from his medication, the ALJ was not required to make findings regarding his side effects when assessing his subjective complaints.") (citation omitted); *Vega v. Comm'r of Soc. Sec.*, No. 2:15-CV-280-FTM-MRM, 2016 WL 4927577, at *7 (M.D. Fla. Sept. 16, 2016) ("[N]othing in Plaintiff's testimony here suggests that the side effects from her medication – dizziness and/or drowsiness – were severe enough to be disabling either alone or in combination with her other impairments. Thus, the ALJ was not under a duty to elicit further information about Plaintiff's medication side effects.") (citations omitted).

### B.    Failing to Find Certain Impairments Severe and to Account for Them in RFC

Plaintiff argues that the ALJ improperly held him to a higher standard by finding that his eczema, migraines, and flat feet were not severe physical impairments. (Doc. 11, at 13). Plaintiff also argues that the ALJ's RFC failed to account for Plaintiff's non-severe impairments of eczema, flat feet, and headaches. *Id*. at 10. The Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff did not have a severe physical impairment and that in assessing Plaintiff's RFC, the ALJ properly evaluated his impairments and accounted for the limitations supported by the record. (Doc. 12, at 4, 11).

An impairment or combination of impairments is "severe" if it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities"[7] and persists for at least twelve

---

[7] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se

consecutive months. 20 C.F.R. §§ 404.1520(c); 404.1505(a). Plaintiff bears the burden to prove that an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability." *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017). In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Id*. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Id*.; 20 C.F.R. § 404.1545(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951-52. Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ satisfied the requirements of the threshold inquiry by finding that Plaintiff has severe impairments, namely PTSD and history of substance abuse. (Tr.

---

of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR § 404.1521(b) (2016).

17); *see Jamison*, 814 F.2d at 588. Because the ALJ found that Plaintiff has at least one severe impairment, the ALJ was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process. *See Tuggerson-Brown*, 572 F. App'x at 951-52; *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. A'ppx 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").

Although the ALJ did not err at step two, the court must still review whether or not the ALJ considered all of Plaintiff's impairments, regardless of severity, in performing the next steps of the sequential evaluation process. Plaintiff argues that the RFC does not include any exertional limitations or restrictions for his eczema, which flares during periods of exposure to high temperatures, or for his headaches or flat feet. (Doc. 11, at 10).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a). "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer*, 542 F. App'x at 891-92. "[I]t is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). "A statement by the ALJ that [the ALJ] considered the combination of impairments constitutes an adequate expression of such findings." *Kelly v. Berryhill*, No. 1:17-CV-35, 2018 WL 3430679, at *4 (M.D. Ala. July 16, 2018). *See Heatly*

11

*v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (citing *Jones v. HHS*, 941 F.2d 1529, 1533 (11th Cir. 1991) for the proposition that "a simple expression of the ALJ's consideration of the combination of impairments constitutes a sufficient statement of such findings"); *see id.* at 825 n.3 ("The record also does not support Heatly's argument that the ALJ's alleged error at step two prevented the ALJ from considering all of his impairments in combination in the rest of the sequential evaluation. At step four, the ALJ explicitly stated that it considered 'the entire record' and 'all symptoms.'"). Under Eleventh Circuit precedent, where "the ALJ stated that he evaluated whether [the claimant] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining [the claimant's] RFC," "those statements are enough to demonstrate that the ALJ considered all necessary evidence." *Tuggerson-Brown*, 572 F. App'x at 951-52 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)); *Hamby v. Soc. Sec. Admin., Com'r*, 480 F. App'x 548, 550 (11th Cir. 2012).

"[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914-GMB, 2017 WL 4683933, at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)); *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *accord Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work.").

Here, the ALJ found that while Plaintiff testified that he had headaches, which he believed

were "related to his (mild) sleep apnea," "the record documents only a few complaints of, and treatment for, headaches." (Tr. 18, 40, 50, 51, 294). The ALJ also found that Plaintiff had "not been under the regular care of a neurologist, he ha[d] not required imaging of his brain, and his neurological exams, as documented in his treatment records with his primary care provider, [were] generally normal." (Tr. 18). As for his flat feet, the ALJ noted that Plaintiff "did not testify to any ongoing problems related to his flat feet" and that his "flat feet ha[d] been treated conservatively with custom orthotics and nonsteroidal anti-inflammatory medication," "[h]e walks with a normal gait and he does not require a cane or other assistive device." (Tr. 18, 50, 391, 413-14, 420, 448). The ALJ further found that Plaintiff's eczema was "stable and generally well controlled with medication." (Tr. 18, 294). In considering these opinions, the ALJ gave great weight to state agency consultant Dr. Gregory K. Parker as his opinion was supported by the record. (Tr. 18, 50-51). State agency medical or psychological consultants are considered experts in Social Security disability evaluation. *Hanisee v. Comm'r of Soc. Sec.*, 797 F. App'x 449, 450 (11th Cir. 2019); 20 C.F.R. § 404.1527(e)(2).

The ALJ concluded that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (Tr. 18). Additionally, the ALJ's opinion stated that the ALJ considered "the entire record" as well as "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (Tr. 19). In assessing Plaintiff's RFC, the ALJ noted Plaintiff's alleged impairments, including eczema and flat feet. (Tr. 20). The ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not

13

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 20).

Based upon Eleventh Circuit precedent, the court concludes that the ALJ's statements demonstrate that the ALJ sufficiently considered all of Plaintiff's impairments in combination in the rest of the sequential evaluation. *See Tuggerson-Brown*, 572 F. App'x at 951-52; *Heatly*, 382 F. App'x at 825 n.3; *Vangile*, 695 F. App'x at 514 n.2 ("[A]lthough the ALJ did not explicitly mention Vangile's chronic mastoiditis at step three, she did note Vangile 'had alleged disability because of chronic mastoiditis' at step four of her analysis."); *Chavis v. Colvin*, No. 1:14-CV-01147, 2016 WL 2764713, at *6 (M.D. Ala. Apr. 21, 2016), *report and recommendation adopted*, No. 1:14-CV-1147, 2016 WL 2637799 (M.D. Ala. May 9, 2016) ("While the ALJ could have discussed the medical evidence regarding Chavis' headaches in more detail, the ALJ's analysis was sufficient to discharge his duty that he consider all the impairments, severe and nonsevere, in combination."). Further, with respect to the alleged headaches, the ALJ discussed this impairment in fashioning the RFC, stating that "[t]he limitation to unskilled work would additionally account for some occasional complaints of dizziness and other possible medication side effects and some loss of concentration due to pain (headaches, foot pain)." (Tr. 21).

The record reflects that the ALJ properly considered Plaintiff's headaches, flat feet, and eczema. The ALJ's decision adequately explains why these impairments were not considered to be severe. Accordingly, based upon the entire record, the court concludes that the ALJ did not err in considering Plaintiff's alleged impairments at step two and that the ALJ adequately considered Plaintiff's headaches, flat feet, and eczema in formulating his RFC.

**C.**   **RFC is Inconsistent with Dr. Hinton's Opinion**

14

Plaintiff argues that the ALJ's RFC determination that Plaintiff "is able to perform simple, unskilled work" is inconsistent with the opinion of Dr. Donald E. Hinton, Ph. D.—to whose opinion the ALJ gave great weight—that Plaintiff was limited to short and simple instructions. (Doc. 11, at 10). Plaintiff maintains that a limitation of simple unskilled *work* is not the same as a limitation of short and simple *instructions*. (Doc. 16, at 2).

"[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Rodriguez v. Comm'r of Soc. Sec.*, No. 618CV503ORL18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 618CV503ORL18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). "[T]o find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Id*. at 1055-56. An ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record." *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019).

In this case, the ALJ concluded that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to perform simple unskilled work with occasional interaction with the public and changes in the work setting introduced gradually." (Tr. 19). In determining Plaintiff's RFC, the ALJ did not rely solely on the opinion of Dr. Hinton. The ALJ cited Dr. Dinesh Karumanchi's records, which showed that Plaintiff's mental status examinations were generally

normal; that Plaintiff was "routinely alert and fully oriented with normal speech, goal directed and coherent thought processes, intact memory, fair attention and concentration, and fair insight and judgment; and that Plaintiff generally had "no abnormal psychomotor agitation or retardation." (Tr. 20). Examining the medical records from the VA, the ALJ found the following;

> Dr. Wood found that the claimant most likely has PTSD caused by or a result of his military service. The claimant was considered to have an occupational and social impairment with reduced reliability and productivity. The claimant's level of occupational and social impairment has remained the same after each subsequent evaluation, i.e., reduced reliability and productivity. While the claimant's PTSD affects his ability to function, Dr. Wood could not find that the claimant's symptoms as likely as not prevented him from functioning adequately in a standard workplace. Rather, the "conclusion [of the VA] has been that he is still capable of working" notwithstanding his PTSD (Exhibit 5F). Indeed, the claimant acknowledged that he could work in a solitary environment such as in landscaping. . . .
> The undersigned finds that the claimant is able to perform simple unskilled work with occasional interaction with the public and changes in the work setting introduced gradually notwithstanding his PTSD and mild alcohol and cannabis use disorders. The limitation to unskilled work would additionally account for some occasional complaints of dizziness and other possible medication side effects and some loss of concentration due to pain (headaches, foot pain). The ability to perform this work is supported by the claimant's mental health treatment records, which document some ongoing anxiety and depression but otherwise generally normal mental status exams. The claimant is able to interact appropriately with others, he is pleasant, and he engages well. He acknowledged that he could work in a job with limited social contacts. The claimant's PTSD is related to his military service but he worked for several years after he was discharged from the Army, honorably, in 2006. He stopped working in December 2014 after he was laid off due to a reduction in force. According to the VA, the claimant is capable of working and he is not considered to be totally and permanently disabled due solely to his service-connected disabilities (Exhibits 2D, 5F).

(Tr. 21).

The ALJ went on to find that the "ability to perform unskilled work that involves only occasional interaction with the public and changes in the work setting is *further* supported by the opinion of Dr. Hinton." (Tr. 21) (emphasis added). As to Plaintiff's mental residual functional capacity ("MRFC") assessment, Dr. Hinton rated Plaintiff's understanding and memory limitations as follows:

16

The ability to remember locations and work-like procedures.
Not significantly limited

The ability to understand and remember very short and simple instructions.
Not significantly limited

The ability to understand and remember detailed instructions.
Moderately limited

Explain in narrative form the presence and degree of specific understanding and memory capacities and/ or limitations:

ABLE TO UNDERSTAND, REMEMBER AND TO CARRY OUT SHORT AND SIMPLE INSTRUCTIONS BUT NOT COMPLEX ONES.

(Tr. 54). As to rating Plaintiff's sustained concentration and persistence limitations, Dr. Hinton found:

The ability to carry out very short and simple instructions.
Not significantly limited

The ability to carry out detailed instructions.
Moderately limited

The ability to maintain attention and concentration for extended periods.
Moderately limited

The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
Not significantly limited

The ability to sustain an ordinary routine without special supervision.
Not significantly limited

The ability to work in coordination with or in proximity to others without being distracted by them.
Not significantly limited

The ability to make simple work-related decisions.
Not significantly limited

The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and 1ength of rest periods.
Not significantly limited

17

Explain in narrative form the sustained concentration and persistence capacities and/ or limitations:
ABLE TO UNDERSTAND, REMEMBER AND TO CARRY OUT SHORT AND SIMPLE INSTRUCTIONS. IS ABLE TO CONCENTRATE AND ATTEND FOR REASONABLE PERIODS OF TIME OF UP TO 2HRS.

(Tr. 54).

The ALJ summarized Dr. Hinton's report, stating that

Dr. Hinton completed a Mental Residual Functional Capacity Assessment in which he opined that the claimant is able to understand, remember and carry out short and simple instructions and tolerate work changes that are gradually introduced (Exhibit 1A). Contact with the public should not be a usual job duty. The undersigned gives great weight to the opinion of Dr. Hinton, as it well supported by the record as a whole, including evidence received at the hearing level.

(Tr. 21-22).

Plaintiff argues that when the ALJ generalized the wording of the RFC'S limitation (changing the language from "instructions" to "work") the ALJ materially changed the limitation itself, and that, had the ALJ limited Plaintiff's RFC to "understand, remember, and carry out short and simple instructions," all jobs cited by the vocational expert—which all had a reasoning level of two—would have been eliminated, thereby changing the outcome of this case. (Doc. 16, at 3-4). That is, Plaintiff essentially maintains that Dr. Hinton's opinion limited Plaintiff to jobs with a reasoning level of one—i.e., that limiting an individual to "simple" instructions is inconsistent with a reasoning level of two. *Id*. at 3.

"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Thus, "[b]y definition, unskilled jobs require no more than simple tasks." *James C. v. Comm'r, Soc. Sec. Admin.*, No. 1:17-CV-00884-LTW, 2018 WL 6137611, at *5 (N.D. Ga. Sept. 29, 2018); *Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 878 (11th Cir. 2006) (A limitation to simple tasks is contained within the unskilled limitation.). Unskilled work generally requires the following: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are

18

commensurate with the functions of unskilled work--i.e., simple work-related decisions"; (3)
"[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4)
"[d]ealing with changes in a routine work setting." SSR 96-9p, 1996 WL 374185, at *9 (S.S.A.
July 2, 1996); *see also* SSR 85-15, 1985 WL 56857, at *4 (S.S.A. 1985) ("The basic mental
demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis)
to understand, carry out, and remember simple instructions; to respond appropriately to
supervision, coworkers, and usual work situations; and to deal with changes in a routine work
setting."). "Using the skill level definitions in 20 CFR 404.1568 . . . unskilled work corresponds
to a[] [specific vocational preparation] SVP of 1-2." SSR 00-4P, 2000 WL 1898704, at *3 (S.S.A.
Dec. 4, 2000). "Thus, [an] ALJ's reference to unskilled work may be considered as incorporating
[a] plaintiff's abilities to understand, carry out, and remember short and simple instructions on a
sustained basis." *Shawbaker v. Colvin*, 189 F. Supp. 3d 1168, 1174 (D. Kan. 2016); *Washington
v. Berryhill*, No. CV 17-0395, 2018 WL 3078763, at *7 (S.D. Ala. June 20, 2018) (citing *Anderson
v. Astrue*, Civ. A. No. 2:11-00046, 2011 WL 3843683, at * 3 (S.D. Ala. Aug. 30, 2011) (where the
court held that security regulations, "read together, establish that unskilled work requires the ability
to understand, carry out, and remember simple instructions and duties ..."); *Deidre T. v. Comm'r,
Soc. Sec. Admin.*, No. 1:17-CV-00650, 2018 WL 7823090, at *17 n.29 (N.D. Ga. Sept. 28, 2018)
("[B]y limiting claimant to unskilled work, [the ALJ] implicitly found that she retained the mental
capacity to understand, carry out, and remember simple instructions; respond appropriately to
supervision, coworkers, and usual work situations; and deal with changes in a routine work setting
. . . .").

"Job descriptions in the [Dictionary of Occupational Titles] [DOT] include specific
vocational preparation time ("SVP") numbers and reasoning levels, which supply supplemental

information about the listed jobs." *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872 (11th

Cir. 2016). The DOT describes the reasoning levels of one, two and three, as follows:

> 03 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.
>
> 02 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> 01 LEVEL REASONING DEVELOPMENT
> Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

https://occupationalinfo.org/appendxc_1.html#II (last viewed September 23, 2020); *see also* DOT

Appendix C – Components of the Definition Trailer, 1991 WL 688702 (Jan.1, 2016). "'A

limitation to short and simple instructions appears more consistent with Reasoning Development

Level 1 or Level 2 than with Level 3. Indeed, it seems that such a limitation falls somewhere

between Levels 1 and 2.'") *Viverette v. Comm'r of Soc. Sec.*, No. 20-11862, 2021 WL 4272355,

at *5 (11th Cir. Sept. 21, 2021) (quoting *Keller v. Berryhill*, 754 F. App'x 193, 197-98 (4th Cir.

2018) (citations and footnote omitted)).

The ALJ asked the VE whether jobs existed in the national economy for an individual with

Plaintiff's age, education, work experience, and RFC. (Tr. 23, 42-43). The VE testified that, given

all of these factors, Plaintiff would be able to work as a hand packager, DICOT 920.587-018, 1991

WL 687916; a poultry farm laborer, DICOT 411.687-018, 1991 WL 673428; and a kitchen helper,

DICOT 318.687-010, 1991 WL 672755. (Tr. 23, 43). Each job has a reasoning level of 2, which

correlates to unskilled work as listed in Plaintiff's RFC. *See* Anderson, 2011 WL 3843683, at *4

(S.D. Ala. Aug. 30, 2011) ("Thus, there was no actual conflict between the vocational expert's

testimony that Plaintiff could perform the cited unskilled jobs and the applicable DOT information

20

because all of the jobs have an SVP of 2, which correlates to unskilled work."); *Eplee v. Saul*, No. 1:19CV113-MOC, 2019 WL 5550079, at *4 (W.D.N.C. Oct. 25, 2019) ("Furthermore, a limitation to 'unskilled work' indicates that any instructions would be uninvolved to satisfy reasoning level two concerns, which require employees to carry out 'detailed but uninvolved' instructions.").

In *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315 (11th Cir. 2021), the Eleventh Circuit determined that "'simple' does not plainly contradict 'detailed.'" *Id*. at 1323. The Court explained:

> The primary difference between levels one and two is the *length* of the instructions--not the complexity. While level one specifies that the instructions must be "simple," level two similarly specifies that they must be "uninvolved." *Merriam-Webster* defines "simple" as "readily understood or performed;" it defines "uninvolved" as "not involved," meaning not "marked by extreme and often needless or excessive complexity." *Simple*, *Uninvolved*, *Involved*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com. "Simple" is listed as an antonym for "involved." *Id*. Accordingly, the difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length. This interpretation is confirmed by the description of level three, which lifts the restriction on how complex the instructions can be--allowing for any "instructions."

*Id*.

In this case, Dr. Hinton limited Plaintiff to short and simple instructions, but not complex ones; however, Dr. Hinton did not specifically limit Plaintiff to "simple one- or two-step instructions" or otherwise indicate that Plaintiff could only perform at reasoning level one. In any event, "a short and simple instructions restriction shares the word "simple" with the Level 1 definition but could permit instructions of more than two steps." *Keller*, 754 F. App'x at 198. Further, the record reflects that the ALJ considered other evidence along with Dr. Hinton's entire opinion in fashioning the RFC, although Plaintiff focuses on only one part of Dr. Hinton's opinion. An ALJ "is under no obligation to obtain or adopt a medical source statement's findings as [the ALJ's] RFC finding." *Smith v. Comm'r, Soc. Sec. Admin.*, No. 2:15-CV-00964-HGD, 2017 WL 167322, at *6 (N.D. Ala. Jan. 17, 2017). The jobs of hand packager, poultry farm laborer, and

21

kitchen helper all have a reasoning level of 2, which are consistent with Plaintiff's RFC's limitation of simple unskilled work. Based upon a review of the whole record, the court concludes that the ALJ considered the entire record in determining Plaintiff's RFC and that the ALJ's RFC is supported by substantial evidence. *See Est. of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *7 (S.D. Fla. Aug. 26, 2020), *report and recommendation adopted*, No. 19-61745-CIV, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) ("[T]he ALJ found Dr. Nazario's opinion that Plaintiff could 'experience difficulty interacting with others appropriately given his reported symptoms and that [Plaintiff] appears able to understand and retain simple instructions' was consistent with the medical evidence, which the ALJ incorporated into Plaintiff's RFC requiring 'unskilled work and occasional interaction' with others at work.").

### D.   VA Disability Rating

Plaintiff argues that the ALJ failed to consider the VA disability Ratings regarding Plaintiff's eczema and migraines. (Doc. 11, at 11 ). The Commissioner contends that the ALJ properly considered the VA rating as a whole and that any error in the ALJ's failure to consider specifically the VA ratings for eczema and migraines is harmless. (Doc. 12, at 10, 11).

"[A] decision by any other government agency, such as the VA, regarding a claimant's disabled status 'is based on [that agency's] rules and is not [the commissioner's] decision' as to disability. Instead, the Commissioner must 'make a disability ... determination based on social security law.'" *Boyette v. Comm'r of Soc. Sec.*, 605 F. App'x 777, 779 (11th Cir. 2015) (citing 20 C.F.R. § 404.1504). "'Although the V.A.'s disability rating is not binding on the [SSA], it is evidence that should be given great weight.'" *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) (citation omitted). "Even when an agency's definition of disability differs from that of social security law, if the agency's disability definition is construed in a similar manner as the definition of disability under social security law, it is error for the ALJ

to not give that agency's finding of disability great weight." *Hughes v. Comm'r of Soc. Sec. Admin.*, 486 F. App'x 11, 16 (11th Cir. 2012). "Great weight" does not mean controlling weight, but "the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." *Id*. However, an ALJ is not required to "state the precise amount of weight he gives the VA's disability determination." *Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 857 (11th Cir. 2013). Moreover, "if the other agency's standard for determining disability deviates substantially from the Commissioner's standard, [it is not] error for the ALJ to give the agency's finding less than substantial weight." *Hacia v. Comm'r of Soc. Sec.*, 601 F. App'x 783, 786 (11th Cir. 2015). "[B]ecause other agencies may apply different rules and standards than we do for determining whether an individual is disabled, this may limit the relevance of a determination of disability made by another agency." SSR 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006). In sum, the court must first ask "whether the ALJ's decision shows that she considered the other agency's decision. If the ALJ's decision does not discuss the other agency's decision, the case must be remanded to the Commissioner for consideration of the other agency's decision." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020) (citation omitted). However, if the ALJ did discuss the other agency's decision, "the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision. If there is substantial evidence in the record, then the ALJ's decision should be affirmed." *Id*. (citation omitted).

Unlike Social Security's requirements for determining disability, the VA regulations provide that "[t]otal disability will be considered to exist when there is present any impairment of mind or body which is sufficient to render it impossible for the average person to follow a substantially gainful occupation." 38 C.F.R. § 3.340(a)(1). "[A] claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary," and "[t]he

23

Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits . . . ." 38 U.S.C. § 5107(a), (b). "When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant." *Id*. § 5107(b). "For a veteran with multiple service-connected disabilities, the regulations instruct the VA to combine the individual ratings using a 'combined ratings table' instead of adding up the percentage of each disability." *Pirtle v. Saul*, No. CV 119-112, 2020 WL 3971512, at *4 n.3 (S.D. Ga. July 14, 2020), *report and recommendation adopted*, No. CV 119-112, 2020 WL 4587518 (S.D. Ga. Aug. 10, 2020); *see* 38 C.F.R. § 4.25.

Plaintiff argues that he was diagnosed with a VA disability rating of 60% for his eczema and 50% for his migraines (Tr. 445), but that the ALJ completely ignored these specific disability ratings. (Doc. 11, at 12). Although the ALJ did not cite these disability ratings, the record reflects that the ALJ considered Plaintiff's VA disability rating as a whole and considered the medical evidence regarding Plaintiff's eczema and migraine impairments. As to Plaintiff's combined service-connected disabilities, the VA rated Plaintiff 70% disabled. (Tr. 141). The VA did not consider Plaintiff to be totally and permanently disabled due solely to his service-connected disabilities. (Tr. 141). The ALJ referenced the VA's findings, stating that "[*a*]*ccording to the VA, the claimant is capable of working and he is not considered to be totally and permanently disabled due solely to his service-connected disabilities*." (Tr. 21, 141, 437-532) (emphasis added). The ALJ also said that "[t]he undersigned has considered the claimant's VA disability rating, *including a 50% rating for PTSD, in formulating the residual functional capacity*." (Tr. 21, 445) (emphasis added). Thus, while the ALJ did not parse out Plaintiff's individual disability ratings for eczema and migraine headaches, the ALJ considered Plaintiff's service-connected disabilities rating as a whole and simply highlighted Plaintiff's specific rating for PTSD, which had been found to be a

severe impairment. *See LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013) ("The VA rating reflects the cumulative effect of all of LaRiccia's impairments, just as the ALJ's assessment of residual functional capacity reflects a claimant's functional capacity in light of all of his limitations, not just those that are 'severe.'"). The ALJ gave "great weight to the finding from the VA that the claimant has some functional limitations secondary to his PTSD," but concluded that "based on Social Security rules and regulations and the record as a whole," that Plaintiff retained "the ability to perform a range of unskilled work as set forth in the residual functional capacity." (Tr. 21). As stated previously, the ALJ considered the medical record in addressing Plaintiff's allegations of headaches and eczema and found that there were "only a few complaints of, and treatment for, headaches"; that Plaintiff had not been "under the regular care of a neurologist"; that he had "not required imaging of his brain" and his neurological examinations were generally normal; and that his eczema was "stable and generally well controlled with medication." (Tr. 18).

Accordingly, the ALJ considered the VA's disability rating as a whole and determined that Plaintiff's allegations of eczema and migraine headaches as disabling impairments were inconsistent with the objective medical evidence.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 28th day of September, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge